Filed 9/19/25  Haselrig v. County of Los Angeles CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| LAJUANA HASELRIG, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES et al., Defendants and Respondents. | B334774 (Los Angeles County Super. Ct. No. 22STCV29582) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Rupert A. Byrdsong, Judge.  Affirmed in part, reversed in part, and remanded with directions.

The Law Offices of Vincent Miller, Vincent Miller, Nick Sage, and James Jirn for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz & Su, Avi Burkwitz, and Gayane Muradyan for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Plaintiff and appellant LaJuana Haselrig contends she was wrongfully terminated, after 34 years of service, from her position as Chief of the Court Services Division of the Los Angeles County Sheriff's Department (LASD).  She filed this action against defendants and respondents County of Los Angeles, former sheriff Alex Villanueva, chief John Satterfield, and deputy David Yoo alleging whistleblower retaliation under Labor Code section 1102.5, retaliation under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA), and six other related claims.

Defendants County, Villanueva, Satterfield, and Yoo demurred to plaintiff's first amended complaint, except for the eighth cause of action for violation of the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.; POBR).  The trial court sustained the demurrer in its entirety without leave to amend.  Plaintiff voluntarily dismissed her POBR claim and appealed from the judgment of dismissal entered in defendants' favor.  She contends her claims are all adequately pled.  She argues that to the extent there are pleading defects, the trial court erred in denying her the opportunity to amend her pleading with additional facts.

We affirm the judgment of dismissal in favor of defendants Villanueva, Satterfield and Yoo.  We vacate the dismissal entered in favor of defendant County and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The operative first amended complaint

Plaintiff's first amended complaint contains seven causes of action:  (1) racial discrimination under FEHA against the County; (2) failure to prevent discrimination under FEHA against the

County; (3) whistleblower retaliation under Labor Code section 1102.5 against the County; (4) retaliation in violation of FEHA against the County; (5) intentional infliction of emotional distress against the County and Villanueva; (6) defamation against the County, Villanueva, Satterfield, and Yoo; and (7) false light against the County, Villanueva, Satterfield, and Yoo. As stated above, plaintiff voluntarily dismissed her eighth cause of action under POBR. We assume the facts alleged in the first amended complaint to be true to resolve whether plaintiff has stated legally viable claims. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 (*Centinela*).)

In March 2021, plaintiff was the chief of the Court Services Division at the LASD. Villanueva was the sheriff of the LASD, Satterfield held the rank of commander, and Yoo was a deputy.

On March 10, 2021, an altercation, captured on video, occurred at the San Fernando Courthouse involving an inmate named Enzo Escalante and an LASD deputy, Douglas Johnson. The video showed Escalante throwing punches at Johnson, and Johnson eventually subduing Escalante for approximately three minutes by placing his knee on Escalante's neck and restricting his breathing in a manner "reminiscent" of the excessive force used against George Floyd in Minnesota. Escalante "struggled to breathe but did not die." We refer to the altercation as the Escalante incident.

After being alerted to the Escalante incident, commander Allen Castellano reported the matter to plaintiff—his supervisor. Plaintiff in turn "immediately" reported the matter to her supervisor, assistant sheriff Robin Limon who, according to plaintiff, was "generally considered as number 3 in command

3

after Villanueva and [undersheriff Timothy] Murakami." Both Castellano and plaintiff asked Limon to take a copy of the video to Villanueva, and she agreed to do so. On March 15, 2021, plaintiff gave a copy of the video to Limon "and watched her walk toward [Villanueva's] office."

Later that same day, Limon told plaintiff that she and several others watched the video in Villanueva's office, that Villanueva agreed the use of force "looked troubling" and he said he would "handle it."

Thereafter, with plaintiff "in the loop" and "guid[ing]" Castellano's efforts, Castellano moved forward according to normal LASD procedures to have the Escalante incident investigated through the LASD Internal Affairs Bureau (Internal Affairs) and to obtain a consult with the LASD Internal Criminal Investigations Bureau (Criminal Investigations).

However, shortly after the video was shown to Villanueva, Villanueva began taking steps to thwart the investigation of the Escalante incident. He replaced captain Robert Jones in the West District with captain Jacqueline Sanchez. Sanchez, at Villanueva's direction, did not follow normal protocols, but rather delayed Castellano's efforts to have Deputy Johnson's actions reviewed. She also delayed a review of Escalante's actions during the altercation. Sanchez told Castellano the case against Escalante had not been forwarded to the district attorney because it would open a "pandora's box." Plaintiff reported this information to Limon in June 2021.

By July 2021, plaintiff and Castellano were alarmed by the continued delays in the investigation. Under plaintiff's supervision and with her "review and approval," Castellano continued to create a paper trail of the efforts to move the

investigation forward. Castellano's final report in July 2021 documented numerous irregularities and "possible crimes" that had been committed by LASD personnel in handling the Escalante incident. The report also stated unnamed LASD executives "above the rank of chief" had directed the investigation. Plaintiff and Castellano hoped the report would "jump start" a proper investigation but Villanueva "continued to quash the investigation."

In the fall of 2021, captain Angela Walton replaced Captain Sanchez in the West District, saw the video of the Escalante incident, and spoke with Castellano about it. On November 21, 2021, with Captain Walton's assistance, a review of the Escalante incident by Criminal Investigations was finally approved.

Villanueva was "enraged" by the Criminal Investigations review. Villanueva immediately opened "a fake [Internal Affairs] investigation" of Castellano to deflect criticism. The investigation of Castellano concluded on March 6, 2022, with a finding that Castellano allegedly had made a procedural error that caused delays in the investigation.

On March 25, 2022, the Los Angeles Times obtained the Escalante video and published an article about "the Villanueva cover up." Villanueva reacted by publicly lying about the incident and saying he first learned of the video in November of 2021. Villanueva thereafter attempted to "falsify a timeline to fit his cover up" of what actually occurred during the Escalante incident. Villanueva had commander Joseph Williams, a member of his staff, contact Captain Walton about the sequence of events. When Captain Walton explained the true timeline "did not align" with what Villanueva was saying, she was transferred from her command position.

5

On March 29, 2022, three days after denying there had been any intentional coverup of the Escalante incident in the LASD, Villanueva "changed his story again" and admitted a coverup had occurred, falsely pointing the finger at plaintiff and Limon as the responsible parties. He "announced he was acting against" plaintiff and Limon, "manipulated" the media with false information, and published photographs of plaintiff and Limon as "disgraced law enforcement officials" responsible for the LASD's mishandling of the Escalante incident.

Villanueva retaliated against plaintiff and Limon demanding they agree to an immediate retirement or face a demotion if they refused. Villanueva sent Undersheriff Murakami to plaintiff's home while she was on medical leave to give her the ultimatum and insist she make an immediate decision. Villanueva "constructively terminated" plaintiff.

Plaintiff filed a government claim on May 4, 2022, alleging whistleblower retaliation and racial discrimination and received a right to sue letter.

In May 2022, "defendants" leaked a memo to two media outlets that had "purportedly" been written by Satterfield, at Villanueva's direction. The memo was "clearly written for purposes of litigation" and was "full of glaring holes, inconsistencies, and deficiencies" in an attempt to exonerate Villanueva and implicate plaintiff and Limon in the mishandling of the Escalante incident. The memo falsely stated plaintiff and Limon committed "gross" failures in leadership and that plaintiff, Limon, Castellano, and Jones attempted to cover up the Escalante incident. The memo is a public document on the LASD's website "perpetually defaming" plaintiff and the other whistleblowers.

On August 8, 2022, Villanueva "posted an announcement" that the Los Angeles district attorney had convened a grand jury regarding the LASD's handling of the Escalante incident. Villanueva, at the same time, falsely suggested plaintiff, Limon and Castellano were the targets of that investigation by making references to the LASD's investigation having shown that personnel "falsely" portraying themselves as whistleblowers were responsible for any misconduct.

Villanueva and Yoo defamed plaintiff on August 31, 2022, when they lied about plaintiff and the other whistleblowers, calling them criminals, and said their "frivolous lawsuits" were efforts to "avoid accountability or prosecution" for their own misdeeds regarding the Escalante incident.

The first amended complaint also alleges, in addition to the above allegations concerning the Escalante incident, that Villanueva "targeted [p]laintiff for being African American" and retaliated against her on account of her race and because she opposed his illegal conduct in violation of FEHA and against whistleblowers generally. We discuss those allegations in more detail in part 2 of the Discussion below.

**2.    Procedural summary**

Plaintiff filed this action in September 2022. After a demurrer to the original complaint was sustained with leave to amend, plaintiff filed her first amended complaint. Defendants County, Villanueva, Satterfield, and Yoo demurred to causes of action one through seven, arguing various immunities and asserting that plaintiff's claims failed to state sufficient facts. Defendants did not demur to the eighth cause of action under POBR.

7

The court sustained defendants' demurrer in its entirety without leave to amend and entered a judgment of dismissal in their favor. While the record does not contain a copy of the dismissal, plaintiff apparently voluntarily dismissed her POBR cause of action.

This appeal followed.

## DISCUSSION

Where the lower court has entered a judgment of dismissal after sustaining a demurrer without leave to amend, our review is de novo. (*Centinela*, *supra*, 1 Cal.5th at p. 1010; accord, *Erlach v. Sierra Asset Servicing, LLC* (2014) 226 Cal.App.4th 1281, 1291 (*Erlach*).) For the limited purpose of reviewing the legal sufficiency of the challenged pleading, we " ' " 'treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' " ' " (*Centinela*, at p. 1010.) In determining whether the operative complaint states a cause of action, " ' "we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." ' " (*Ibid.*) We are not concerned at the pleading stage with evidentiary matters or the "plaintiff's ability to prove the allegations." (*Erlach*, at p. 1291.)

In assessing whether the denial of leave to amend was an abuse of discretion, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

8

### 1. Whistleblower retaliation

Plaintiff's cause of action for whistleblower retaliation in violation of Labor Code section 1102.5 is pled against the County. The County contends plaintiff failed to plead the essential elements of the claim. We disagree.

Labor Code section 1102.5 " 'reflects the broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation.' [Citation.] An employee injured by prohibited retaliation may file a private suit for damages." (*Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 709 (*Lawson*); see also Lab. Code, § 1105.) To plead a violation of Labor Code section 1102.5, plaintiff must allege she engaged in whistleblowing activity protected by the statute, and that the protected activity was a contributing factor in her suffering an adverse employment action. (Lab. Code, § 1102.6; *Lawson* at p. 712.)

Plaintiff alleges the Escalante incident involved an excessive use of force that likely violated state law, federal law, and LASD protocols. Plaintiff adequately alleges, within the meaning of Labor Code section 1102.5, that she reported a violation of federal, state, or local law. Plaintiff also alleges she reported the Escalante incident to Limon, her supervisor; asked that the video be shown to Villanueva; and directed Castellano's efforts to follow LASD protocols to investigate the Escalante incident. The complaint therefore adequately alleges plaintiff's report was made "to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." (Lab. Code, § 1102.5, subd. (b).)

Despite the County's argument to the contrary, plaintiff need not allege that she made her report directly to Villanueva.

Furthermore, the statute provides that a report by a public employee to their employer, as occurred here, "is a disclosure of information to a government or law enforcement agency" within the meaning of the statute. (Lab. Code, § 1102.5, subd. (e).) Finally, plaintiff alleges that because she was a whistleblower, Villanueva and the County constructively terminated her.

While other factors, including the Los Angeles Times article, may also have played a role in the County's decision to constructively terminate her, she adequately alleges that her initial report of the Escalante incident in March 2021 and her subsequent efforts to ensure it was investigated were contributing factors. She was not required to allege they were the sole motivating factors. (Lab. Code, § 1102.6; *Lawson*, *supra*, 12 Cal.5th at p. 712.) We conclude plaintiff's allegations of whistleblower retaliation under Labor Code section 1102.5 are sufficient for the pleading stage. The demurrer to the third cause of action should have been overruled.

## 2.    The FEHA claims

### 2.1    Retaliation

In her fourth cause of action, plaintiff alleges a retaliation claim against the County under FEHA. "The elements of a claim for retaliation in violation of Government Code section 12940, subdivision (h), are: '(1) the employee's engagement in a protected activity . . . ; (2) retaliatory animus on the part of the employer; (3) an adverse action by the employer; (4) a causal link between the retaliatory animus and the adverse action; (5) damages; and (6) causation.' " (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 243.)

10

Plaintiff alleges she told Villanueva after he was elected that she hoped "there would be fairness and opportunity" for qualified African American candidates to be promoted at the LASD, and that he responded by saying, "we have enough of you, [black people]." Plaintiff alleges she continued to oppose violations of FEHA and objected directly to Villanueva when he failed to interview qualified African American candidates and female candidates. After informing Villanueva the law required him to interview qualified candidates for captain or other promotions regardless of race, plaintiff "was no longer allowed to attend [Villanueva's] administration meetings."

In addition, plaintiff alleges Villanueva made both internal and public statements that there were "too many African American" division chiefs in the LASD, including during one media interview where he noted pictures of division chiefs on the wall and pointed out that nine of them were African American and only one was Latino. Villanueva referred to African Americans as "knuckle dragger[s]," said they were responsible for most crimes against Asian Americans, and refused to discipline Undersheriff Murakami for using the Japanese slang version of the "n" word.

Plaintiff also alleges she repeatedly objected directly to Villanueva that he could not take revenge on whistleblowers, sending him texts to "stand down," and explaining that he was exposing the LASD to liability. She says Villanueva eventually retaliated against her, as an African American woman, choosing to blame her as one of the individuals responsible for the mishandling of the Escalante incident in order "to further his goal of reducing the number of African Americans employed by LASD."

11

Defendants argue that plaintiff alleges retaliation based on her reporting of the Escalante incident which does not qualify as protected activity under FEHA. Defendants' argument disregards plaintiff's additional allegations regarding other reporting activity that does qualify as protected activity under FEHA. Read fairly and in context, plaintiff's allegations adequately state an alternative theory of retaliatory termination based on workplace reporting of FEHA violations. "It is well established that a retaliation claim may be brought by an employee who has complained of or opposed conduct that the employee reasonably believes to be discriminatory" even if that conduct ultimately is determined not to violate FEHA. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1043.)

At oral argument, the County urged us to find this cause of action fails as a matter of law because plaintiff did not allege any temporal connection between her alleged protected activity and her constructive termination. Counsel for the County asserted the incidents all occurred a significant period of time before March 2022 when plaintiff alleged she was constructively terminated and the case law requires allegations demonstrating a close temporal connection, citing to *Loggins v. Kaiser Permanente International* (2007) 151 Cal.App.4th 1102.

Here, however, the precise timing of the protected activity is not alleged in the first amended complaint. Moreover, *Loggins*, an appeal from the grant of summary judgment, does not purport to establish a bright-line rule fixing any particular length of time as too long to qualify as close temporal proximity under FEHA.

We conclude the resolution of whether there was the requisite degree of temporal proximity and causation between

12

plaintiff's protected activity and her constructive termination is better left to resolution on the factual merits.

The demurrer should have been overruled to the fourth cause of action.

### 2.2    Racial discrimination and failure to prevent

Plaintiff alleges two additional claims against the County arising under FEHA:  the first cause of action for racial discrimination (Gov. Code, § 12940, subd. (a)), and the second cause of action for failure to prevent racial discrimination (Gov. Code, § 12940, subd. (k)).

In order to allege a prima facie claim of racial discrimination under FEHA, plaintiff must allege she was a member of a protected class, she was performing competently, and she suffered an adverse employment action because of her status in a protected class.  (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355; see also Gov. Code, § 12993 [the provisions of FEHA "shall be construed liberally" to accomplish its purposes].)

Plaintiff alleges she is an African American woman who worked for over three decades at the LASD, receiving several promotions and attaining the rank of chief of the Court Services Division.  She alleges numerous statements by Villanueva reflecting racial animus, as well as animus directed at plaintiff based on her efforts opposing conduct she believed violated the rights of African American personnel at the LASD.  She alleges Villanueva's racial animus was a contributing factor to her termination.

Similar to their argument against her retaliation claim, defendants argue that plaintiff failed to allege an adverse employment action connected to race.  We disagree.  In order to state a viable claim, plaintiff was *not* required to plead that racial

13

animus was the sole motivation behind the decision to terminate her. (*L.A. County Office of the Dist. Atty. v. Civil Serv. Com* (1997) 55 Cal.App.4th 187, 201; *Mixon v. Fair Employment & Housing Com* (1987) 192 Cal.App.3d 1306, 1319.) We conclude plaintiff's discrimination claim is sufficient for the pleading stage.

The same allegations are adequate to support plaintiff's cause of action for failure to prevent discrimination. Plaintiff alleges the County was aware of Villanueva's behavior and failed to address it. To the extent the County asserted its temporal proximity argument also applied to these two FEHA claims, we again conclude resolution of that issue is better left for the factual merits. The demurrer to the first and second causes of action should have been overruled.

## 3.    Intentional infliction of emotional distress

Plaintiff's fifth cause of action for intentional infliction of emotional distress is pled against the County and Villanueva. They contend they are immune from liability under Government Code section 821.6 and that plaintiff failed to state sufficient facts. We reject defendants' immunity argument, but conclude plaintiff has failed to state a viable claim.

Under the Government Claims Act (Act), public entities are directly liable in tort only as "provided by statute." (Gov. Code, § 815, subd. (b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1127.) But public entities are vicariously liable for the acts of their employees "under the principle of respondeat superior." (*Zelig*, at p. 1128; accord, *Leon v. County of Riverside* (2023) 14 Cal.5th 910, 918 (*Leon*); see also Gov. Code, § 815.2, subds. (a), (b), § 820, subd. (a).)

14

For public employees, " ' "the rule is liability, immunity is the exception." ' " (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 792.)  The Act makes public employees generally liable to the same extent as a private person for acts or omissions taken in the course and scope of employment, except to the extent a specific statute creates an immunity.  (*Leon, supra,* 14 Cal.5th at p. 918.)

Government Code section 821.6 states that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  (*Ibid.*)  The Supreme Court recently reaffirmed the narrow scope of section 821.6 immunity in *Leon, supra,* 14 Cal.5th 910, explaining that "[i]n enacting section 821.6, the Legislature conferred absolute immunity against claims based on injuries caused by wrongful prosecutions, but *not other types of injuries* inflicted in the course of law enforcement investigations." (*Leon,* at p. 928, italics added.)  *Leon* disapproved of numerous decisions that expanded the scope of the immunity, to the extent they were inconsistent with its holding, including three cases cited by defendants here:  *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, *Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, and *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205.  (*Leon,* at pp. 930–931.)

There are no allegations that defendants initiated or prosecuted an official proceeding against plaintiff.  Defendants appear to suggest the immunity of Government Code section 821.6 applies to cloak actions taken by public employees in responding to litigation initiated by others.  That is not the intent of the statute.  *Leon* makes clear it is intended to protect

15

public employees from being sued for their own acts of alleged malicious prosecution. (*Leon*, *supra*, 14 Cal.5th at pp. 928–931.) Section 821.6 immunity does not apply here.

We must therefore assess whether plaintiff has stated the essential elements of her claim. A cause of action for intentional infliction of emotional distress requires the pleading of facts showing extreme and outrageous behavior specifically intended to cause harm. "A defendant's conduct is 'outrageous' when it is so ' " 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " ' [Citation.] And the defendant's conduct must be ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051; see also CACI No. 1600.)

Plaintiff alleges that Villanueva intentionally "smeared" her and Limon, falsely stating in public they were the individuals who had "obstructed justice and committed the cover up" of the Escalante incident. Villanueva "led the public" to believe she was a "disgraced law enforcement official forced out of her job due to her corruption."

Villanueva's disparaging statements about plaintiff made during press conferences, or in other public forums, are barred by the absolute privilege codified at Civil Code section 47, subdivision (a), commonly referred to as the official act privilege. Section 47, subdivision (a), provides that "[a] privileged publication or broadcast is one made: [¶] (a) In the proper discharge of an official duty." (*Ibid*.)

The County and Villanueva did not argue the official act privilege, and the trial court did not state the bases for its ruling so we do not know whether the privilege played any part in the court's decision to sustain the demurrer. However, it is well-

16

established that "[w]e will affirm an order sustaining a demurrer on any proper legal ground whether or not the trial court relied on that theory or it was raised by the defendant." (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 992.)

In *Kilgore v. Younger* (1982) 30 Cal.3d 770 (*Kilgore*), the plaintiff sued the Attorney General for defamation, intentional infliction of emotional distress, and invasion of privacy based on statements made by the Attorney General at a press conference in which he adopted statements in a report, and released copies of the report to the press, suggesting the plaintiff was involved in an illegal bookmaking operation. (*Id.* at pp. 774–778.) The Supreme Court found the official act privilege applied and affirmed the Attorney General's judgment of dismissal following a successful demurrer. (*Ibid.*)

*Kilgore* explained that the official act privilege of Civil Code section 47, subdivision (a), (formerly section 47(1)), is absolute. (*Kilgore*, *supra*, 30 Cal.3d at p. 778.) "Unlike qualified privileges, it is not negated by malice or other personal motivation . . . . Further, the privilege is equally applicable to defamation and other actions, excepting only those for malicious prosecution. [Citation.] For the absolute privilege to attach, the public official need only be properly discharging an official duty." (*Ibid.*)

Villanueva's public statements about the LASD's handling and investigation of the Escalante incident were unquestionably statements about matters of public interest that fell within the scope of his duties as the head of the LASD. Those statements, even if made with malicious intent, are protected by the absolute privilege of Civil Code section 47, subdivision (a). (*Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1089 [" 'Because a public official's

17

duty includes the duty to keep the public informed of his or her management of the public business, press releases, press conferences and other public statements by such officials are covered by the "official duty" privilege' "].)

The demurrer was properly sustained to the fifth cause of action. Because the official act privilege is absolute and plaintiff has not suggested any other material facts that can be pled to state an alternative theory for defendants' liability for intentional infliction of emotional distress, plaintiff cannot show the denial of leave to amend was an abuse of discretion. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

## 4. Defamation and false light

Plaintiff's claims for defamation and false light, against all four defendants, are alternate theories based on the same allegations of wrongdoing. Plaintiff alleges defendants published numerous false statements about her alleged mishandling of the Escalante incident that tarnished her reputation and ruined her lengthy career in law enforcement.

The County contends it cannot be held liable since no authorizing statute provides that a public entity can be held liable on the common law claims of defamation and false light. The argument lacks merit. The County may not be held directly liable, but as we already explained above, it may be held vicariously liable for the acts of its employees taken in the course and scope of the employment, assuming no statute provides an immunity. (*Leon*, *supra*, 14 Cal.5th at p. 918; see also Gov. Code, § 815.2, subds. (a), (b), § 820, subd. (a).)

The individual defendants argue that both claims fail on the elements. We conclude the demurrer was properly sustained as to both causes of action as to all four defendants.

18

### 4.1    Defendants County and Villanueva

The defamatory statements attributed to Villanueva are the same public statements that form the basis of plaintiff's intentional infliction of emotional distress claim.  They all concern public statements by Villanueva about the Escalante incident.  For the same reasons explained in part 3 above, the statements are absolutely privileged by the official act privilege of Civil Code section 47, subdivision (a).  Furthermore, denial of leave was not an abuse of discretion.  Plaintiff has not argued any facts showing a reasonable possibility of pleading any statements not covered by the privilege.

### 4.2    Defendants Satterfield and Yoo

The defamatory statements attributed to Satterfield and Yoo are minimal.  Plaintiff alleges Satterfield "purportedly" drafted the May 2022 memo at Villanueva's direction that disparages plaintiff and then they both leaked it to the media.  As for Yoo, plaintiff alleges that Villanueva and Yoo "released a statement to the media" in August 2022 that included comments about the frivolous nature of plaintiff's lawsuit and otherwise disparaged plaintiff.  No further specificity is stated about any independent statements attributable to either Satterfield or Yoo.  Plaintiff only alleges their minimal participation with Villanueva, in largely conclusory terms, in those purportedly joint publications.

To the extent plaintiff's allegations are based on public statements by Villanueva, the statements are covered by the official act privilege discussed above.  To the extent plaintiff's allegations can be read liberally to conclude that either Satterfield or Yoo made their own defamatory statements not

covered by the privilege, plaintiff has failed to comply with the requirements for pleading defamation.

Defamation requires specific, nonconclusory allegations of the intentional publication of a provably false, unprivileged factual assertion.  (*Comstock v. Aber* (2012) 212 Cal.App.4th 931, 948.)  "As Witkin distills the pleading rule, 'It is sometimes said to be a requirement, and it certainly is the common practice, to plead the exact words or the picture or other defamatory matter.  The chief reason appears to be that the court must determine, as a question of law, whether the defamatory matter is on its face or capable of the defamatory meaning attributed to it by the innuendo.  Hence, the complaint should set the matter out verbatim, either in the body or as an attached exhibit.' " (*Ibid*.)  Plaintiff has not done so.  It cannot be determined from plaintiff's pleading what words, if any, are directly attributable to either Satterfield or Yoo, whether they are actionable assertions of fact or nonactionable opinion, or otherwise covered by privilege.

The demurrer was properly sustained and leave to amend properly denied.

### 4.3    False light

The false light claim, based on the same conduct as the defamation claim, is legally inadequate for the same reasons discussed above.

## DISPOSITION

The judgment of dismissal in favor of Alex Villanueva, John Satterfield, and David Yoo is affirmed.

The judgment of dismissal entered in favor of the County of Los Angeles is vacated.  The order sustaining the demurrer to the first amended complaint is affirmed in part, reversed in part and the case remanded to the superior court for further proceedings.

On remand, the superior court is ordered to vacate its order and enter a new order on the demurrer as follows: the demurrer of the County of Los Angeles is overruled to the first cause of action for racial discrimination under Government Code section 12940 (FEHA), the second cause of action for failure to prevent racial discrimination under FEHA, the third cause of action for whistleblower retaliation under Labor Code section 1102.5, and the fourth cause of action for retaliation under FEHA. The demurrer is sustained without leave to amend to the fifth cause of action for intentional infliction of emotional distress, the sixth cause of action for defamation and the seventh cause of action for false light.

The parties shall bear their own costs of appeal.


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.


21